In the Matter of the Accounting of NATIONAL CITY BANK OF TROY, as Executor of WILLIAM HURD, Deceased.

Surrogate's Court, Rensselaer County, March 18, 1953.

*Smith, Pattison, Roberts & Sampson* for executor, petitioner.

*Elmer M. Rasmussen* for Harland B. Hurd and another, respondents.

ISENBERGH, S. This is a proceeding for the judicial settlement of the accounts of the National City Bank of Troy, as executor of the last will and testament of William Hurd, late of the city of Troy, deceased.

The petitioner herein asks for a construction of the will of the said decedent and a determination of the questions raised by the objections of Harland B. Hurd and Elizabeth H. Gregory, remaindermen under the said will.

The testator died October 22, 1951. His will was admitted to probate in this court on the 26th day of October, 1951, and letters testamentary were issued to the petitioner herein on that date. The testator, in his will, made provision for cash legacies and in paragraph SIXTH set up a trust of the residue, both real and personal, the income therefrom to be paid to his wife, Edna E. Hurd, for life, and in the event the income should in any year be less than $3,500, giving the trustee full power and authority, in its absolute discretion, to invade the principal to the extent of making up the difference between the income and $3,500. In paragraph SEVENTH the testator, upon the death of his wife, bequeathed and devised one third of the remainder to his daughter, Elizabeth Hurd Gregory, and, if she be not living, to her issue then living per stirpes and not per capita; two thirds of the remainder to his son, Harland B. Hurd, and, if he be not living, to his issue then living per stirpes. By paragraph EIGHTH the trustee was authorized to retain any stocks of which the testator died possessed and to invest and reinvest the funds in securities, whether legal investments for trust funds or not. It is part of subdivision (c) of paragraph EIGHTH with which we are concerned, and which reads as follows: " The proceeds of the sale of any rights to subscribe to stocks or other securities, and any dividends received by said trustee which shall be payable or paid in the shares of the corporation or association declaring such dividends shall constitute principal and not income of the trust fund receiving the same. All

dividends received in cash, whether ordinary or extraordinary, and including dividends received in cash from corporations with wasting assets, even though paid from reserves for depletion, shall be deemed to be income, but this provision shall not apply to liquidating dividends."

The testator, at the time of his death, owned shares in Massachusetts Investors Trust, Incorporated Investors, Nationwide Securities, Dividend Shares, Inc., and American Business Shares, Inc. The executor, in the course of administration, received dividends from these companies, some of which were called " capital gain dividends ", payable in cash or stock at the option of the owner of the stock and, if no election were made, payable by the company in stock. The executor failed to make an election and received the dividends in stock, some of which it later sold and allocated the money received therefrom to income.

The remaindermen object to that part of Schedule C of the accounting which sets up various dividends received from the above-mentioned stocks as income; to that part of Schedule I which sets forth shares of these companies under the title " Securities received as capital gain Dividends and held in Income Account "; to Schedule H which states that some of the shares of stock were sold and that the will of the deceased did not give the executor the right to sell the same.

For the purpose of facilitating the questions arising in the construction of this will, the executor and the remaindermen have stipulated:

1. That the dividends referred to in objections one and two of the objectants are capital gain dividends declared and paid by Regulated Investment Companies registered as such under the Internal Revenue Code.

2. That the decision of the Surrogate herein affecting the capital gain dividends of Massachusetts Investors Trust shall be binding and effective as to all other capital gain dividends mentioned in objections one and two of the objectants.

It is evident, from the stipulation filed with the court, that there are only two questions before it for decision.

First — Whether the dividend declared by Massachusetts Investors Trust, received by the executor and stipulated to be capital gains, shall be paid to the life beneficiary as income, or should be regarded as principal, and added to the corpus of the trust, and

Second — Whether the executor had the power and authority to sell the shares of stock it received as a dividend.

There is no question here of the fact that the company is a regulated investment trust and, as such, is registered under the Internal Revenue Code. This elected classification by the company is made for tax purposes and thereafter the company is required to distribute annually not less than 90% of its income earnings from interest and dividends, as well as all of its profits from long-term capital gains. Upon making such distribution the company also must advise its stockholders of the proportion of the total dividends derived from long term capital gains and the proportion attributable to income received on investments. Capital gains dividends received by investment trusts registered under the Internal Revenue Code have heretofore been classified as income payable to the life beneficiaries. (*Matter of Byrne,* 192 Misc. 451; *Matter of Bruce,* 192 Misc. 523; *Matter of Granath,* N. Y. L. J., Nov. 24, 1952, p. 1260, col. 8.)

However, in all of the above cases, the will was silent as to treatment to be given to dividends. In the present case, the court is confronted with that part of subdivision (c) of paragraph EIGHTH of the will as hereinbefore quoted.

It will be noted that one part of the paragraph refers to dividends paid, or payable in stock, and another part refers to dividends payable in cash. The dividends paid by Massachusetts Investors Trust were payable in stock or in cash, at the option of the executor and, in the event no election was made by the executor, the dividend would be paid by the company in stock. In determining whether this dividend was a stock dividend or a cash dividend, it is evident that this clause of the will is of little help because, by an election in one instance, the executor could make it a stock dividend. By another election, it could be made a cash dividend and, by remaining silent, an election was made by the company on behalf of the stockholder by forwarding the dividend in stock.

It certainly could not have been the intention of the testator that the income to the life beneficiary was to be dependent upon whether the trustee wrote a letter to a company designating that the dividend to be paid by the company should be forwarded in stock or in cash. If that were the case, a trustee, under certain circumstances, could, whenever such a dividend in the alternative was declared by a company, designate that it be paid in stock and keep the life beneficiaries' income at a minimum, thereby continually increasing the corpus of the trust.

Prior to 1926 stock dividends were apportioned between life beneficiaries and remaindermen, in accordance with the rules laid down in *Matter of Osborne* (209 N. Y. 450).

In 1926 (L. 1926, ch. 843) the Legislature amended section 17-a of the Personal Property Law, which reads as follows: "Unless otherwise provided in a will, deed or other instrument, which shall hereafter be executed and shall create or declare a trust, any dividend which shall be payable in the stock of the corporation or association declaring or authorizing such dividend and which shall be declared or authorized hereafter in respect of any stock of such corporation composing, in whole or in part, the principal of such trust, shall be principal and not income of such trust. The addition of any such stock dividend to the principal of such trust, as above provided, shall not be deemed an accumulation of income within the meaning of this article."

The section, however, does not define what is a stock dividend and it is with that question that the court is principally concerned. The fact that a company names a dividend a "stock dividend" does not, in and of itself, make it so. Subdivision 8 of section 350 of the Tax Law defines the words "dividend", and "stock dividends" as follows: "The word 'dividend' means any distribution made by a corporation out of its earnings or profits to its shareholders or members, whether in cash or in other property or in stock of the corporation, other than stock dividends as herein defined. 'Stock dividends' means new stock issued, for surplus or profits capitalized, to shareholders in proportion to their previous holdings."

In *Matter of Villard* (147 Misc. 472), where the court ordered the stock dividend paid to the life beneficiary, the trust corpus had among its assets one hundred shares of the common stock of North American Company. During the period of the trust, the company never paid a dividend in cash. It paid quarterly stock dividends from current annual earnings. The trustee, during the continuance of the trust, cashed the stock dividends each time and paid the cash received therefrom to the life beneficiary. The contention of the special guardian for the infant child, one of the remaindermen, was that the stock dividend should be added to the corpus of the trust by the trustee, pursuant to section 17-a of the Personal Property Law.

The court held in the *Villard* case (p. 478): "There is no difference between annual cash dividends and annual stock dividends paid out of current earnings. [Citing *McLouth* v.

*Hunt,* 154 N. Y. 179, 193–194, and other cases.] * * * By the use of the words ' net income ' the testatrix intended to include everything in the way of income or profits accruing from the corpus of the trust fund. (*Matter of Hagen,* 237 App. Div. 476, 481 * * *.) * * * Net profits of a business are deemed income. Dividends are paid out of profits where the excess of current receipts is over the current payments. Such are ordinary dividends. In the instant case the distribution of profits on yearly gain was not a true stock dividend, even though offered through a giving of stock. A true stock dividend is merely an increase in the number of shares; the increased number representing the same property that was represented by the smaller number of shares. A dividend is not capital, but the product of capital, the profits earned.''

The only case in anywise similar to the one before this court is *Kellogg* v. *Kellogg* (166 Misc. 791, affd. 254 App. Div. 812). The *Kellogg* case declared that a dividend payable to the stockholder in cash or stock at the election of the stockholder or, where no election was made, should go to the life tenant. The facts are recited therein (pp. 791–792) as follows: '' The trust agreements of 1916 provided: ' It is understood and agreed between the parties that any stock dividend or dividends, or distribution of property other than cash, received by the trustees at any time during the life of the trust upon the stock of Spencer Kellogg and Sons, Inc., shall for the purpose of this trust be considered principal and not income.' The dividend in question was paid in accordance with the following resolution adopted by the board of directors of Spencer Kellogg and Sons, Inc., on the 14th day of June, 1937: ' *Resolved,* that a dividend be and the same is hereby declared, payable, at the election of each stockholder, either in cash or in capital stock of this corporation, August 16, 1937, to stockholders of record at the close of business August 2, 1937, at the following rates: (a) 50¢ per share in cash; or (b) One share of capital stock for each 50 shares of capital stock now outstanding. Any stockholder electing to receive cash shall notify the Company * * * All stockholders who shall not have so notified the Company of their election to receive cash, will be paid their dividends in stock.' ''

The trustees made no election and the court, in its opinion, said (p. 792): '' It seems to me quite clear that this dividend was not a ' stock dividend ' as that term is used in law. If all of the stockholders had elected to receive their dividends in

cash, and consequently no stock had been issued, it would occur to no one to call this payment a stock dividend. A stock dividend is declared only by the directors, and, therefore, it cannot be that the character of a dividend is to be determined by the actions of the stockholders. In this particular case most of the stockholders received their dividends in stock, but some elected to receive cash. That surely cannot make the same dividend a cash dividend in some instances and a stock dividend in others. Moreover, this dividend was paid not out of surplus but out of profits made during the current year, and it has none of the other usual attributes of a stock dividend. It was not simply a dilution of the existing shares, but it was an actual distribution of the property of the corporation to those who elected to take cash. After its payment the stockholders did not continue to own the same proportionate share of the assets of the corporation.''

My attention has been called to *Matter of Ryan* (294 N. Y. 85), where Standard Oil Company of New Jersey paid a '' regular dividend '' of fifty cents in cash and an '' extra '' stock dividend of 1%. The court held that the stock dividend which the life tenant sought to have paid to him should be allocated to principal. That decision was based upon an '' extra stock '' dividend of 1%. It was a declaration of both a cash and a stock dividend. There was no option on the part of the stockholder of payment by the company in cash or in stock, or upon a failure to exercise the option a payment by the company to the stockholder in stock. The company was not a regulated investment company and the dividend declared was not a result of capital gains occurring in the year it was declared.

In the case before this court, the Massachusetts Investors Trust as part of its business invested in stocks and sold the same at opportune times for the benefit of its stockholders. This buying and selling of stock is part of its regular business and it derives part of its profits and earnings from such transactions. Necessarily, the profits derived therefrom are called '' capital gains ''. Capital gains are defined in subdivision 13 of section 350 of the Tax Law as follows: '' The words ' capital gain ' means gain or profit from the sale or exchange of capital assets.''

The dividend declared by the Massachusetts Investors Trust was not a *stock dividend,* it being payable at the option of the stockholder in cash or in stock. It was an ordinary dividend declared by the company in the regular course of its business.

The dividend arose from capital gains and was declared in accordance with the rules and regulations of the Internal Revenue Code applying to investment trusts. It was incumbent upon the company to distribute these capital gains to its stockholders. The option given to the stockholder in nowise changed the nature of the dividend. It only provided a method for those stockholders who so desired, and who had confidence in the future of the company to reinvest the dividend in the stock of the company by taking these dividends in stock instead of cash, thereby obtaining a greater equity in the company and a greater share of the profits and earnings of the company in the future. Such was the nature of the dividend declared by the company. The decision of this court is that the dividend is payable to the life beneficiary of the trust as it is not a true stock dividend as contemplated by section 17-a of the Personal Property Law.

Objection is made by the remaindermen to the sale of the following stocks: twenty-three shares Massachusetts Investors Trust, three shares Incorporated Investors, and fourteen shares of American Business Shares, Incorporated. An examination of the account shows that these stocks were sold at a profit. There was no loss incurred by the estate as the moneys received from the sale of the stock are properly accounted for in the account filed. There is no charge that the executor was negligent, that it did not act in good faith, nor that the sales were improvident or imprudent. Clearly, the executor had a right to sell these stocks under the power and authority vested in him by section 214 of the Surrogate's Court Act.

All the objections of the remaindermen are overruled.

Submit decree on notice settling account accordingly.